JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Anthony DiGiglio and Dorson Hess

**(b)** County of Residence of First Listed Plaintiff   Carbon, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Stephen T. O'Hanlon, O'Hanlon Law Firm, 1500 JFK Blvd., Ste 1850, Philadelphia, PA 19102. (267) 546-9066.

## DEFENDANTS

U.S. Xpress Enterprises, Inc., Pratt Industries, Inc., Wayne Osborne, David Tomsheck, Donita Kemerer, Christine Doe, Fayedra Powell, Christian Westgate

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ❏ 2  U.S. Government Defendant
- ❏ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 376 Qui Tam (31 USC |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | ❏ 840 Trademark | ❏ 460 Deportation |
| Student Loans | ❏ 340 Marine | Injury Product | | | ☒ 470 Racketeer Influenced and |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 480 Consumer Credit |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | Act | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | Relations | ❏ 864 SSID Title XVI | Exchange |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 751 Family and Medical | | ❏ 891 Agricultural Acts |
| | ❏ 362 Personal Injury - | Product Liability | Leave Act | | ❏ 893 Environmental Matters |
| | Medical Malpractice | | ❏ 790 Other Labor Litigation | | ❏ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ❏ 870 Taxes (U.S. Plaintiff | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | or Defendant) | ❏ 899 Administrative Procedure |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | Act/Review or Appeal of |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other | ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1962

Brief description of cause:
Compelled illegal activity and retaliation.

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
2,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____   DOCKET NUMBER _____

MAR - 8 2017

DATE
03/08/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

17  1039

Address of Plaintiff: _C/o_ _O'HANLON LAW FIRM, P.C._

Address of Defendant: _FIRST DEF.: 400 JENKINS RD. CHATTANOOGA, TN 37421_

Place of Accident, Incident or Transaction: _PA, NJ, NY_
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐ No☑

Does this case involve multidistrict litigation possibilities?   Yes☐ No☑
RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐ No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐ No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐ No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐ No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
    (Please specify) _CIVIL RICO_

B. Diversity Jurisdiction Cases:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

ARBITRATION CERTIFICATION
(Check Appropriate Category)
I, _STEPHEN T. O'HANLON_, counsel of record do hereby certify:
☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _3/8/17_ _____ _208428_
                 Attorney-at-Law       Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

MAR - 8 2017

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _3/8/17_ _____ _208428_
                 Attorney-at-Law       Attorney I.D.#

CIV. 609 (5/2012)



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

Anthony Di Giglio, et al.          :          CIVIL ACTION
                                   :
                v.                 :          **17    1039**
U.S. Xpress, et al.                :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (x)

3/8/2017                    Stephen O'Hanlon               Plaintiffs
**Date**                   **Attorney-at-law**            **Attorney for**

267. 546. 9066             215. 567. 1998                 steve@ohanlonlawfirm.com
**Telephone**              **FAX Number**                 **E-Mail Address**

(Civ. 660) 10/02

MAR - 8 2017



# IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY DiGIGLIO | : | Civil No. _____ 17 1039 |
| -and- | : | |
| DORSON HESS, | : | JURY TRIAL DEMANDED |
|       Plaintiffs, | : | |
| | : | |
|     *v.* | : | |
| | : | |
| U.S. XPRESS ENTERPRISES, INC. | : | |
| -and- | : | |
| PRATT INDUSTRIES, INC. | : | |
| -and- | : | |
| WAYNE OSBORNE | : | |
| -and- | : | |
| DAVID TOMSHECK | : | |
| -and- | : | |
| DONITA KEMERER | : | |
| -and- | : | |
| CHRISTINE "DOE" | : | |
| -and- | : | |
| FAYEDRA POWELL | : | |
| -and- | : | |
| CHRISTIAN WESTGATE, | : | |
|       Defendants. | : | |

## COMPLAINT AND JURY DEMAND

Plaintiffs, Anthony Digiglio and Dorson Hess, by their undersigned counsel of the O'Hanlon Law Firm, P.C., hereby demand a trial by jury and complain against the above-captioned Defendants as follows:

### Introduction

1.      This is an action to recover money damages and is brought pursuant to 18 U.S.C. § 1962 in that all Defendants have engaged in a pattern of racketeering activity.  Jurisdiction is based upon 28 U.S.C. §§ 1331.

2.      Plaintiffs, Antony DiGiglio ("Plaintiff DiGiglio") and Dorson Hess ("Plaintiff Hess") (collectively "Plaintiffs"), are residents and citizens of the Commonwealth of Pennsylvania, residents of Carbon County, and citizens of the United States.  Plaintiffs were each employed by Defendant U.S. Xpress Enterprises, Inc. ("Defendant U.S. Xpress") for periods of approximately eighteen (18) months at an outsourced location where Defendant U.S. Xpress provides trucking services for Pratt Industries (U.S.A.), Inc. ("Defendant Pratt") in Macungie, Pennsylvania.  Plaintiffs were frequently assigned duties at Defendant U.S. Xpress' outsourced job site at 7533 Industrial Parkway, Suite 100, Macungie, Pennsylvania 18062 where Defendant U.S. Xpress provided and continues to provide transport services for Defendant Pratt.

3.      Defendant U.S. Xpress is a transport and warehousing company headquartered and incorporated in the State of Tennessee and with additional related corporate entities incorporated in the State of Nevada.

4.      Defendant Pratt is a Georgia Corporation with a related corporate entity, Pratt Industries, Inc. registered in the State of New York.

2

5.      Defendant Wayne Osborne (hereinafter "Defendant Osborne") is or was the driver manager for Defendant U.S. Xpress.

6.      Defendant David Tomsheck (hereinafter "Defendant Tomsheck") is or was the safety manager for Defendant U.S. Xpress.

7.      Defendant Donita Kemerer (hereinafter "Defendant Kemerer") is or was the human resources manager for Defendant U.S. Xpress.

8.      Defendant Christine "Doe" is or was a dispatcher for Defendant U.S. Xpress at Defendant Pratt's site in Macungie, Pennsylvania.

9.      Defendant Fayedra Powell (hereinafter "Defendant Powell") is or was the shipping manager for Defendant Pratt.

10.     Defendant Christian Westgate (hereinafter "Defendant Westgate") is or was the shipping manager for Defendant Pratt.

## Jurisdiction and Venue

11.     This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 1367.

12.     This Court has jurisdiction over all Defendants in that they caused the practices alleged herein to be extensively conducted in Eastern District of Pennsylvania and all Defendants have extensive contacts with the Eastern District of Pennsylvania.

13.     Venue is proper pursuant to 31 U.S.C. § 3732(b)(2) in that Defendants have transacted a substantial part of the fraudulent business that is the subject matter of the present lawsuit in the Eastern District of Pennsylvania.

14.     All Defendants, by their intentional actions and intentional omissions, have engaged in repeated acts of mail and wire fraud pursuant 18 U.S.C. § 1341 and 1343 by devising

3

schemes of obtaining money fraudulently and by transmitting false records to federal and state authorities, each Defendant conspired to do same for each Defendant's pecuniary interest, and each Defendant, where applicable, could be imprisoned for up to twenty years.

**Facts**

15.     Plaintiff Digiglio was employed by Defendant U.S. Xpress since June 13, 2012, for approximately eighteen months but he was not provided with any assignments because of, *inter alia*, the allegations alleged herein and complaints associated therewith. Plaintiff Digiglio has most recently worked at 7533 Industrial Parkway, Suite 100, Macungie, Pennsylvania, 18062, where Defendant U.S. Xpress provided and continues to provide transport services for Pratt Industries, Inc. Plaintiff Digiglio has also previously worked on outsourced assignments for Defendant U.S. Xpress at Taylor Farms, New Jersey, Inc., in Swedesboro, New Jersey. For these projects, Defendant U.S. Xpress engaged in the same practices as alleged in detail herein regarding activity at Defendant Pratt.

16.     Plaintiff Hess was employed by Defendant U.S. Xpress from October 9, 2013 until March 4, 2014, when Plaintiff Hess was forced to resign and seek new employment because his assignments were limited due, *inter alia*, to the complaints related to the allegations detailed herein.

17.     Plaintiffs were truck drivers at Defendant U.S. Xpress' outsourced location and roles included delivering and picking up products and Plaintiffs had contracts for employment whereby if Plaintiffs performed legal truck driving assignments correctly, Plaintiffs would receive additional assignments and associated agreed-upon income and related benefits.

18.     In their period of employment with Defendant U.S. Xpress, Plaintiffs were repeatedly encouraged and effectively forced by Defendants Osborne, Tomsheck, Kemerer, Doe,

Powell, and Westgate to turn off and/or modify data associated with their Personal Driver Login I.D.s and/or to alter driver tech/sat com driver hour information in order to simulate that Plaintiffs were driving less hours than they were actually driving and thereby fraudulently verifying driving hours and underreporting transmitted hours to the DOT and other government agencies. Plaintiffs were threatened with, *inter alia*, fewer hours and driving assignments, being put on medical leave without pay in retaliation for complaining and to deprive Plaintiffs of all employment prospects, and left out on the highway without accommodation if they did not comply with the coercion of all Defendants.

19.    Plaintiff Digiglio occasionally complied under duress and Plaintiff Hess complied on one occasion in or around November of 2013 when he was on the road with his vehicle during a snowstorm on the way back from Castleton On Hudson, New York. Defendant Osbourne, U.S. Xpress' fleet manager, informed Plaintiff Hess that he would not be put up at a hotel despite running over legal driving hours and Plaintiff Hess was instructed to turn off his electronic driver's log and to drive back to Macungie, Pennsylvania. Usually it is a matter of driver discretion as to whether it is safe to drive in the snow but Defendant U.S. Xpress, through Defendant Osbourne, ordered Plaintiff Hess to drive back to Macungie from Upstate New York.

20.    Both Plaintiffs frequently complained about lack of compliance with federal regulations, non-payment of appropriate taxes and highway tolls, false reporting to the government, and general safety. These complaints were ignored and other drivers frequently violated and continue to violate federal law and other regulations regarding driver driving time limits. All drivers at the outsourced location had and have hours of service violations which include eleven (11) hours of driving in one (1) day, a maximum of a fourteen (14) hour work day, and a maximum of seventy (70) hours in an eight (8) day period. Drivers also violated the

thirty-four (34) hour reset rule which mandates that a truck driver must be off duty for a minimum of thirty-four (34) hours, which must include two consecutive days of 1 a.m. to 5 a.m., after accruing a maximum seventy (70) hours and to qualify for a restart.  In addition, a driver cannot do more than one reset within a one-hundred-and-sixty-eight (168) hour period which is a total hour figure including driving time, non-driving work time, and rest time.

21.     There were frequent violations of these regulations including doing second runs off the clock in the same day, no accounting for yard jockeying driving time when trucks are moved around the depot, and drivers illegally taking mandatory thirty (30) minute breaks while still being in their cabins when their truck was being loaded or unloaded and during refueling. The cumulative effect of such actions and omissions resulted in all Defendants knowingly making, using, and causing to be made and used, frauulent records and statements material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the federal Government and other state and municipal authorities.  In the course of commission of the above fraudulent acts, all Defendants purposefully falsified, for their own monetary benefit, trip sheets, bills of lading, scale tickets, time sheets, and paystubs.

22.     The alleged practices detailed herein are also subject to 49 C.F.R. Subtitle B, Chapter III, Part 386, Subpart G, Appendix B (i) which states that "[a] person, or an officer, employee, or agent of that person, that by any means tries to evade regulation of motor carriers under Title 49, United States Code chapter 5, chapter 51, subchapter III of chapter 311 (except sections 31138 and 31139) or section 31302, 31303, 31304, 31305(b), 31310(g)(1)(A), or 31502, or a regulation issued under any of those provisions, *shall* be fined at least $2,000 but not more

than $5,000 for the first violation and at least $2,500 but not more than $7,500 for a subsequent violation." (empasis added).

23.     Plaintiffs and other drivers such as an African-American male named Herb, an African-American male named Dan, a Hispanic male named Carlos, and an African-American male named Christian have also been continuously encouraged and effectively forced by Defendant U.S. Xpress, Defendant Pratt, and all other Defendants to minimize and underreport federally mandated break times to the DOT and other government agencies which mandate a thirty (30) minute break within eight (8) hours of service.  For instance, while at Defendant Pratt in Staten Island, New York, truck drivers impermissibly took their thirty (30) minute breaks while their trucks were being loaded and/or unloaded.

24.     The cumulative effect of such actions and omissions resulted in all Defendants knowingly making, using, and causing to be made and used, fraudulent records and statements material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or underreporting obligations to pay or transmit money or property to the federal Government and other state and municipal authorities.  Plaintiffs and other drivers engaged in the same or similar practices when they drove for Defendant U.S. Xpress and delivered and/or picked up from various locations.

25.     In Philadelphia, Plaintiffs and other Defendant U.S. Xpress and Defendant Pratt drivers delivered to Restaurant Depot at 2905 Roberts Avenue, Philadelphia, PA 19129.  All Defendant U.S. Xpress and Defendant Pratt drivers, including Plaintiffs, use(d) highways located in the Eastern District of Pennsylvania.

7

26.     Plaintiffs were also encouraged and forced to sign fraudulent bills of lading that testified to particular weights of trucks and cargoes when trucks were never weighed so Plaintiffs and other employees of Defendant U.S. Xpress and Defendant Pratt never had any knowledge of the actual weight of their trucks.  The implication of failing to weigh trucks and the distribution of weight on trucks' axels means that there were negative safety implications but, in addition, Defendants U.S. Xpress and Pratt purposefully failed to pay appropriate taxes based on weight to the U.S. Treasury and other authorities and also continuously failed to pay appropriate highway toll fees, a portion of which would have gone to the federal government and other state and municipal governments.

27.     The cumulative effect of such actions and omissions resulted in Defendant U.S. Xpress and Pratt knowingly trasmitting fraudulent information for monetary gain to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the federal Government and other state and municipal authorities.

28.     There were other violations committed, including but not limited to, no pre-trip and post-trip inspections, which are mandated inspections to determine the roadworthiness of trucks, faulty equipment, engine warnings which were ignored, cracked windshields, and so on. Each of these violations was designed to save Defendants U.S. Xpress and Pratt money and avoid the payment of government fines and other fess and put the public and employees in danger.

29.     By violating these regulations on a daily basis with approximately twenty (20) drivers in Plaintiffs' site alone, Defendants U.S. Xpress and Pratt have to this point avoided paying substantial taxes to the U.S. Treasury, the DOT, and other government agencies and have

gained a fraudulent competitive advantage over law-abiding competitors.  Any kind of inspection of Defendant U.S. Xpress' and Defendant Pratt's operation will show that all of the violations detailed in the present Complaint continue to this day and will continue absent necessary intervention.

30.     The cumulative effect of such actions and omissions resulted in all Defendants knowingly making, using, and causing to be made and used, fraulently mailed and wired records and statements material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the federal Government and other state and municipal authorities.

31.     Defendant U.S. Xpress also falsified federally-mandated Trip Sheets and Scale Tickets.  Pay stubs corroborate falsification of working hours and illustrate illegal activity and company credit card fuel station receipts show that trips reported were impossible given the mileage covered and the manipulated trip times reported.   In addition, this is all-the-more problematic because Defendant U.S. Xpress' eighteen trucks at Macungie are not properly serviced on a legally frequent basis and trucks have, *inter alia*,  broken windshields, leaking oil, broken doors, ignored safety warning lights, damaged tires, and trucks cut out during highway driving.   These purposeful avoidance of pre-trip requirements (and verified statements to the contrary) continues to the present time with Plaintiffs having video evidence of same from April 20, 2015.

32.     Plaintiffs constantly complained about these practices and refused to sign illegal bills of lading, fraudulent paper time logs and trip sheets, and related government compliance

documents, which Defendants purposefully and fraudulently mailed and/or wired to the DOT and other government agencies.

33.     Plaintiffs' complaints angered Defendant U.S. Xpress' and Defendant Pratt's management and resulted in Plaintiff Digiglio not getting any assignments and Plaintiff Hess being forced to resign because he also had insufficient work assignments.

34.     Plaintiff complained to direct managers, such as Defendant Osbourne (Defendant U.S. Xpress' Driver Manager), Defendant Tomscheck (Defendant U.S. Xpress' Head of Safety), and Defendant Kemmerer (Defendant U.S. Xpress' Human Resources Manager) and, yet, no remedial action has followed and Plaintiffs were instructed to just get on with the job and not to upset relations with Defendant Pratt and Defendants Doe, Powell, and Westgate of Defendant Pratt. Another manager, Matt "Doe" of Defendant Pratt stated that he knew what all Defendants were doing was wrong but that he and Plaintiffs had to comply or they would lose their assignments and/or jobs.

35.     Plaintiffs also complained to Defendant Pratt staff such as Doe, Powell, Westgate, and Matt Doe but Plaintiffs were instructed by these Defendants to continue the fraudulent practices or Plaintiffs would not have assignments and income.

36.     Plaintiffs have extensive written communication that will prove that Defendant U.S. Xpress' managerial structure sought and continues to seek to avoid costs associated with adherence to DOT and other regulations and to avoid paying appropriate taxes and toll fees for its vehicles. Defendant Kemerer admitted by telephone to Plaintiffs that corporate headquarters in Tennessee is aware of a nationwide policy and practice of such violations but said that nothing would be done to remedy violations until Defendant U.S. Xpress was caught and sanctioned by some government body.

37. The effects of Defendants' illegal activity has been to fraudulently affect the safety of the highways for monetary gain, including contributing to numerous accidents, and to limit appropriate tax and other government payments, including appropriate highway toll fees, to the United States Treasury, the DOT, and other governmental entities, to put driving members of the public in danger of death, including *inter alia* the actual death of five nursing students in Bryan County, Georgia in 2015, and serious injury because of Defendant U.S. Xpress trucks, and has directly contributed to falsely reported vehicular crashes reported as accidents on the public highways but really attributable to all Defendants' fraudulent acts and omissions.

### Causes of Action

### COUNT ONE:  CIVIL RICO BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

38. Paragraphs 1 through 37 are incorporated herein by reference as though fully set forth.

39. Defendant U.S. Xpress and its managerial Defendants deliberately sought to flout DOT and other regulations in order to, *inter alia*, save money, preserve its contractual relationship with coconspirator Defendant Pratt and its managerial Defendants, avoid paying appropriate taxes and fees to the government by mail and wire, and illegitimately gain a competitive and monetary advantage over industry competitors.  In addition, Defendant U.S. Xpress and Defendant Pratt have falsified government documents to avoid paying appropriate taxes and fees, including highway toll fees, by mailing and/or wiring fraudulent information for monetary gain.

40. All Defendants conspired in a daily process of racketeering, to wit wire and mail fraud, by falsely completing federal forms and transmitting same to federal authorities.  The conspiracy was explicit and verbal in that all Defendants engaged in the same behavior and

11

articulated the illegal activity to be performed and articulated threats if there were complaints as to the illegal activity to be performed.   Plaintiffs' complaints were met by threats.   When Plaintiff Digiglio complained about driving excessive hours or driving off the driving log, Plaintiff Digiglio was threatened with being sent for a health test which he was told he would fail and, in turn, this would have meant that Plaintiff Digiglio would have been unable to drive for Defendant U.S. Xpress or any other freight haulage company.

41.     When Plaintiff Hess was in Upstate New York, Plaintiff Hess was told he must exceed his allotted hours, turn off his driver's log, and drive back to the Defendant Pratt's depot.

42.     Plaintiffs were repeatedly told that they must drive off their electronic driver's log, falsely complete manual forms, and then falsely submit certified documents to federal authorities thereby acting criminally at the behest of all Defendants.

43.     When Plaintiffs complained about having to behave criminally and compromise general safety, their hours were cut by Defendants.

44.     Plaintiff Digiglio was also, as stated, threatened that he would be sent for a medical if he complained and did not do what he was told and this would have thereby limited Plaintiff Digiglio's ability to drive and earn money.

45.     Defendant U.S. Xpress, in addition to ignoring Plaintiffs' complaints and encouraging illegal activity, has retaliated against Plaintiffs by minimizing assignments that are allocated to Plaintiffs.   This has forced Plaintiff Hess to resign on March 4, 2014, in order to attain alternative employment.   In addition, Plaintiff Digiglio has effectively been out of work because he has not received driving assignments.

46.     Plaintiff Digiglio was also threatened with being sent for a medical in order to limit his driving unless he adhered to Defendant U.S. Xpress' demands that he engage in illegal

12

practices detailed herein. Plaintiffs brought the fraud to Defendant U.S. Xpress' attention. Thus, Defendant U.S. Xpress knew that Plaintiffs were engaged in highlighting the fraud and criminality and Plaintiffs suffered retaliation because of their objections and reporting.

47.     The decision to fail to assign jobs to Plaintiffs has been an uncorrected conscious decision by Defendant U.S. Xpress in order to ensure that Plaintiffs would not affect its ongoing fraudulent enterprise and to punish Plaintiffs for failing to comply with Defendant U.S. Xpress' deliberate acts and omissions relating to its ongoing encouragement of those in its employ to violate the law in order to avoid paying taxes and other fees to the U.S. Treasury and other government entities.

48.     Plaintiffs were constructively and actually terminated because of their refusal to continue to engage in ongoing criminal racketeering conspiracy with all Defendants. Plaintiffs were harmed by ongoing threats in order to attempt to ensure compliance with the racketeering conspiracy. This harm was both physical and emotional since Plaintiffs were ordered to drive when legally they should have been resting in order to advance all Defendants' wire and mail fraud racketeering and profiteering.

49.     The direct effect of Defendants' actions has been to jeopardize the safety of its own drivers and all American road users. The deliberate actions of Defendant U.S. Xpress were designed to flout DOT and other safety regulations in order to save and make money and avoid paying taxes, fines, and fees and Defendants continue their illegal and fraudulent practices.

50.     The information and evidence that Plaintiffs will provide in discovery will detail the extent of violations so that appropriate back fines, taxes, and fees may be levied and other action taken in order to ensure future compliance and general safety. The cumulative effect of such actions and omissions resulted in Defendants mailing and wiring fraudulent statements

material to obligations to pay and transmit money to the federal Government and other state and municipal authorities and knowingly concealing and knowingly and improperly avoiding or decreasing obligations to pay or transmit money or property to the federal Government and other state and municipal authorities and thereby engaging in a pattern of racketeering for pecuniary gain.

### Prayer for Relief

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants:

a.    For an amount equal the amount of damages against all Defendants;

b.    For damages and triple damages pursuant to 18 U.S.C. § 1964(c);

c.    For a judgment in favor of for all costs of this action, including, but not limited to, attorneys' fees, expert fees, and court costs;

d.    Attorneys' fees, costs, and disbursements;

e.    For a judgment in favor of Plaintiffs for such other and further relief as the Court deems just and proper; and

f.    Punitive Damages to discourage the degree of fraud engaged in by Defendants and to promote the safety of the highways and citizens and other users thereof.  Defendants have wantonly engaged in repeated acts of gross fraud with a willful disregard for the safety and interests of Plaintiffs and road users throughout the several states.

Respectfully submitted,

STEPHEN T. O'HANLON, ESQUIRE

14

March 8, 2017

Stephen T. O'Hanlon, Esquire
The O'Hanlon Law Firm, P.C.
PA Bar ID # 208428
Attorney for Plaintiffs
2 Penn Center, Suite 1850
1500 John F. Kennedy Blvd.
Philadelphia, PA 19102
Tel:  (267) 546-9066
Fax: (215) 567-1998
steve@ohanlonlawfirm.com

## Demand for Jury Trial

Plaintiffs hereby demand a jury trial.

Respectfully submitted,

STEPHEN T. O'HANLON, ESQUIRE

March 8, 2017

Stephen T. O'Hanlon, Esquire
The O'Hanlon Law Firm, P.C.
PA Bar ID # 208428
Attorney for Plaintiffs
2 Penn Center, Suite 1850
1500 John F. Kennedy Blvd.
Philadelphia, PA 19102
Tel:  (267) 546-9066
Fax: (215) 567-1998
steve@ohanlonlawfirm.com

16